# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF IOWA
# DAVENPORT DIVISION

| | |
|---|---|
| THE ESTATE OF JAMES L. MATHIS, by the executor KENT MANLEY, <br><br> Plaintiff, <br><br> v. <br><br> SEARS MANUFACTURING COMPANY, <br><br> Defendant. | CASE NO.: 3:12-cv-00006-CFB <br><br> **ORDER ON MOTION FOR SUMMARY JUDGMENT** |

This matter comes before the Court on a Motion for Summary Judgment by Defendant Sears Manufacturing Company (Sears), filed on October 3, 2013 (Clerk's No. 27). Plaintiff, the Estate of James L. Mathis (the Estate), filed a Response on October 28, 2013 (Clerk's No. 29). Sears filed a Reply on November 6, 2013 (Clerk's No. 30).

On November 7, 2013, the Court heard arguments on Sears' Motion for Summary Judgment. At the motion hearing, the Estate moved for leave to supplement the Appendix that accompanied its Response to Sears' motion. During the hearing, the Court granted in part the Estate's motion for leave to supplement its Appendix, allowing the Estate to supplement one document—a complaint filed with the Iowa Civil Rights Commission (ICRC) by its decedent, James L. Mathis—with a signature page that was excerpted from its original Appendix. The Estate filed a Supplemental Appendix on November 13, 2013 (Clerk's No. 32). On November 20, 2013, Sears moved to strike the Estate's Supplemental Appendix (Clerk's No. 33), asserting that it contained an entirely new document that constituted the actual signed ICRC complaint, and that the document from the original Appendix that the Estate supplemented was an unsworn

1

follow-up questionnaire that Mathis submitted to the ICRC after filing his complaint. On December 9, 2013, the Estate moved for leave to amend its Supplemental Appendix by removing the pages constituting the follow-up questionnaire, and moved to re-open discovery so that it could depose a corporate representative of Sears (Clerk's Nos. 34–36). Sears resisted these motions on December 13, 2013, maintaining that the Estate's entire Supplemental Appendix should be stricken, and that the Motion for Summary Judgment should be considered fully submitted (Clerk's Nos. 37–38).

On December 24, 2013, the Court denied Sears' Motion to Strike the Estate's entire Supplemental Appendix, granted the Estate's motion to amend its Supplemental Appendix by removing the pages constituting the ICRC follow-up questionnaire, and denied the Estate's motion to re-open discovery. (*See* Clerk's No. 39, Order at 2–3). This matter is fully submitted.

The parties have consented to proceed before a United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c). (*See* Clerk's No. 4). After carefully considering the evidence in the record, and the arguments submitted by the parties, the Court finds and orders as follows.

## I. MATERIAL FACTS NOT IN DISPUTE

Mathis was an employee of Sears from 1977 to 1978, and again from May 1984 to September 2002. (Clerk's No. 27-3, Sears App'x at 1; *see* Clerk's No. 29-2, Estate App'x at 1). During the latter of these two periods, Mathis submitted a doctor's note to Sears, dated June 24, 1985, that recommended Mathis "stay off work until at least . . . June 28," because he had a "recurrent hemorrhage . . . secondary to diabetes." (*See* Clerk's No. 27-3, Sears App'x at 2, 14). Both of these periods of employment ended with Mathis being laid off. (*Id.* at 1).

Mathis began working for Sears again in February 2005, under a short-term agreement to work on a specific project. (*Id.* at 1, 4; *see* Clerk's No. 35-1, Estate Amended Supp. App'x at

2

S4).[1] Mathis continued working for Sears on additional projects until December 2008, performing the duties of a "designer." (*See* Clerk's No. 27-3, Sears App'x at 1; Clerk's No. 29-2, Estate App'x at 2; Clerk's No. 35-1, Estate Amended Supp. App'x at S4). From February 2005 to December 2008, Sears assigned Mathis to certain projects on an as-needed basis, but did not dictate to Mathis how he was to complete his projects, what tasks he needed to perform in the course of his work, or when and how long he was supposed to work on his projects. (Clerk's No. 27-3, Sears App'x at 2). Mathis submitted weekly invoices to Sears, and Sears did not withhold income taxes from Mathis's paychecks, although Iowa Workforce Development—a state employment agency—and the Internal Revenue Service (IRS) later ruled that Sears' treatment of Mathis as an independent contractor for tax and unemployment benefit purposes was incorrect. (*Id.*; *see* Clerk's No. 29-2, Estate App'x at 3–7).

In February 2007, Mathis applied for an open position at Sears, a design-related position similar to one he held during his entire prior employment with Sears. (*See* Clerk's No. 29-2, Estate App'x at 2). Sears interviewed Mathis for the position, and informed him that the position would require a three-month probationary period before hire. (*Id.*; Clerk's No. 35-1, Estate Amended Supp. App'x at S4). From February 2007 to December 2008, Mathis performed assignments and duties related to the open position for which he applied, but his pay never changed, nor did the nature and course of his relationship with Sears; he continued getting paid in accordance to invoices he submitted for work he performed under his own supervision. (*See id.*; Clerk's No. 27-3, Sears App'x at 2). In July 2007, Mathis discussed with his prospective department head whether he would be hired, and was told there was a hiring freeze. (Clerk's No.

---

[1] Mathis's sworn ICRC Complaint states that this period of work began in February 2006. (*See* Clerk's No. 35-1, Estate Amended Supp. App'x at S4). However, a date provided in a portion of Mathis's ICRC follow-up questionnaire corroborates the February 2005 date that Sears has introduced into the record via its Appendix, indicating that "2006" in Mathis's ICRC complaint is a typographical error. (*Compare* Clerk's No. 29-2, Estate App'x at 1, *with* Clerk's No. 27-3, Sears App'x at 1, 4).

35-1, Estate Amended Supp. App'x at S4). Mathis was never hired for the open position, and was discharged by Sears on December 18, 2008. (*Id.*).

On December 16, 2011, Mathis sued Sears in the Iowa District Court for Scott County, alleging that Sears violated the Fair Labor Standards Act of 1938 (FLSA),[2] by improperly classifying him as an independent contractor and denying him employee benefits from February 2005 to December 2008, and Iowa Code sections 216.6 and 216.6A, by paying him less than others performing similar work, refusing to hire him for the position to which he applied, and terminating him because of his age and disability, with the alleged discrimination also taking place from February 2005 to December 2008. (Clerk's No. 1 at 5–7). On January 10, 2012, Sears filed a Notice of Removal in this Court. (Clerk's No. 1). In October 2012, Mathis passed away, and on March 13, 2013, Kent Manley, executor of the Estate, was substituted as Plaintiff. (Clerk's No. 20 at 1).

## II. DISCUSSION AND ANALYSIS

Sears argues that, because the FLSA and Iowa Code sections 216.6 and 216.6A apply only to "employees," and Mathis was an independent contractor and not an employee, it is entitled to summary judgment on all of the Estate's claims. Sears also argues that, even if the Court holds that Mathis was an employee, it is nonetheless entitled to summary judgment because the Estate has not made any showing in the record of discrimination, and has therefore not raised a genuine dispute of material fact on the issue of discrimination. The Estate responds by arguing that Mathis was an employee of Sears from February 2005 to December 2008, and that genuine issues of material fact exist in the record on both age and disability discrimination.

---

[2] 29 U.S.C. § 201 et seq.

**A. Standards for Summary Judgment**

Summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if a reasonable jury could return a verdict for the non-moving party. *Chao v. Barbeque Ventures, LLC*, 547 F.3d 938, 941 (8th Cir. 2008). "The non-moving party receives the benefit of all reasonable inferences supported by the evidence, but has 'the obligation to come forward with specific facts showing that there is a genuine issue for trial.'" *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1207 (8th Cir. 2013) (quoting *Dahl v. Rice Cnty., Minn.*, 621 F.3d 740, 743 (8th Cir. 2010)); *see* Fed. R. Civ. P. 56(c)(1). On a motion for summary judgment, the Court views all the facts in the light most favorable to the non-moving party. *See Popp Telecom, Inc. v. Am. Sharecom, Inc.*, 361 F.3d 482, 487 (8th Cir. 2004).

**B. Improper Classification Under the Fair Labor Standards Act**

The FLSA provides for employer liability for "unpaid minimum wages, or [employees'] unpaid overtime compensation." 29 U.S.C. § 216(b), *invalidated in part by Alden v. Maine*, 527 U.S. 706 (1999) (holding unconstitutional section 216(b)'s authorization of state-court suits against state governments as employers). The Act does not provide a cause of action simply because an employer has misclassified an employee as an independent contractor; any misclassification must deprive the employee of minimum wages or overtime pay to be actionable under the FLSA. *See* 29 U.S.C. §§ 206–207, 215–216; *cf. McInnis v. Ecolab, Inc.*, Civ. No. 11-02196, 2012 WL 892187, at *1 (D. Minn. Feb. 17, 2012) (addressing claims that plaintiff's misclassification as an independent contractor deprived her of overtime compensation under the FLSA and benefits under ERISA); *Parker v. Rowland Express, Inc.*, 492 F.Supp. 2d 1159, 1163

(D. Minn. 2007) ("Plaintiffs allege they were intentionally misclassified as independent contractors to allow Rowland Express to avoid paying them overtime.").

The Estate does not allege, nor has it presented any evidence in the record, that Mathis was deprived of minimum wages or overtime pay. Sears is therefore entitled to summary judgment on the Estate's claim under the FLSA.

**C. Claims Under Iowa Code Sections 216.6 and 216.6A**

Iowa Code section 216.6 makes it unlawful "for any person to refuse to hire . . . to discharge . . . or to otherwise discriminate in employment against any applicant for employment or any employee because of the age . . . or disability of such applicant or employee, unless based upon the nature of the occupation." IOWA CODE § 216.6(1)(a) (2007); *see also* §§ 216.15–.16 (providing administrative and legal relief for persons aggrieved by unfair or discriminatory practices). Section 216.6A, which currently prohibits wage discrimination, was enacted in 2009, after Mathis's last period of work for Sears; it contains no provision indicating that the Iowa legislature intended it to apply retrospectively. *See* IOWA CODE § 216.6A (2013); 2009 Iowa Acts 329–30; *see also Forster v. Deere & Co.*, 925 F.Supp. 2d 1056, 1064–66 (N.D. Iowa 2013) (holding that section 216.6A does not apply retrospectively). For purposes of Sears' Motion for Summary Judgment, however, the Court will assume, without deciding, that section 216.6A provides retrospective relief, and will consider Mathis's claim of wage discrimination, in addition to his claims of discriminatory discharge and failure to hire.

Sections 216.6 and 216.6A are both provisions of the Iowa Civil Rights Act (ICRA), and they apply only to employees and applicants for employment; they do not apply to independent contractors. *Ernster v. Luxco*, 596 F.3d 1000, 1003 (8th Cir. 2010); *see* IOWA CODE §§ 216.1, 216.6–.6A. Before addressing whether the record can support a finding that Sears discriminated

6

against Mathis, the Court must determine Mathis's employment status, and consequently, whether the ICRA even applies.

### 1. Mathis's Employment Status Under the ICRA

Determining whether a worker is an employee or an independent contractor is a question of law. *See Lerohl v. Friends of Minn. Sinfonia*, 322 F.3d 486, 488 (8th Cir. 2003). The ICRA defines "employee" as "any person employed by an employer." IOWA CODE § 216.2(6). An "employer" is "every . . . person employing employees within the state." § 216.2(7). Because the ICRA's definition of "employee" is completely circular, courts use the common-law test from *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318 (1992), to determine whether a worker is an employee or an independent contractor. *See Glascock v. Linn Cnty. Emerg. Med., PC*, 698 F.3d 695, 698 (8th Cir. 2012); *Ernster*, 596 F.3d at 1003–04.

Under the *Darden* test, the court "primarily consider[s] whether the hiring party was able to 'control the manner and means by which a task is accomplished.'" *Glascock*, 698 F.3d at 698 (quoting *Darden*, 503 U.S. at 323). The court also considers:

> (1) the skill required, (2) the source of the instrumentalities and tools, (3) the location of the work, (4) the duration of the relationship between the parties, (5) whether the hiring party has the right to assign additional projects to the hired party, (6) the extent of the hired party's discretion over when and how long to work, (7) the method of payment, (8) the hired party's role in hiring and paying assistants, (9) whether the work is part of the regular business of the hiring party, (10) whether the hiring party is in business, (11) the provision of employee benefits, and (12) the tax treatment of the hired party.

*Id.* Finally, the court considers the economic realities and the terms of the agreement. *Id.* Summary judgment is proper where "a balance of factors show" that the worker was an independent contractor. *See id.* at 699.

In *Glascock v. Linn Cnty. Emerg. Med., PC*, the court found that the record was inconclusive on the primary issue of control where the plaintiff, an emergency room physician,

"determined which patients she would see and . . . was pretty much on her own" while working, but the defendant "set [plaintiff's] schedule based on her availability and preferences, urged her to attend monthly meetings, and regularly reviewed her performance." *Id.* at 698 (internal quotation marks omitted). After determining that the remaining *Darden* factors which showed employee status were "fewer in number and less in weight than those favoring independent contractor status," the court affirmed the trial court's decision granting summary judgment to the defendant. *Id.* at 699.

Viewing the record in the light most favorable to the Estate, the Court finds that Mathis was an independent contractor for Sears from February 2005 to December 2008. The record contains no showing that Sears controlled Mathis's work in any manner beyond deciding the projects on which he would be working. Sears did not control Mathis's daily activities or dictate the number of hours Mathis worked. Sears gave Mathis no direction as to how he was expected to complete the projects to which he was assigned. Unlike in *Glascock*, where the defendant set the plaintiff's schedule, required her attendance at meetings, and reviewed her performance, Mathis's only ongoing communication with Sears shown in the record that and related to the regular performance of his work was submitting invoices on the basis of which he would be paid.

The Court finds that the balance of the remaining *Darden* factors, taken together with the terms of Mathis's work agreement with Sears, are unclear, and do not favor employee status—if they do at all—strongly enough to overcome the clear showing that Sears did not control the manner and means of Mathis's work. Employee status is shown in the record by the following facts: Mathis's last period of work with Sears lasted approximately three years and ten months; Sears assigned Mathis to additional projects (namely, to perform the duties of the vacant position for which he applied), although there is no showing that Sears unilaterally assigned Mathis to

multiple projects simultaneously; Mathis did not have any role in hiring and paying assistants; Mathis performed similar work for Sears in his previous extensive employment there, indicating his work was part of Sears' regular business; and Sears is a business entity. However, the following facts in the record weigh in favor of holding that Mathis was an independent contractor: Mathis had total discretion over when and how long he worked; Mathis was paid hourly, but in accordance with invoices he submitted to Sears; Sears did not provide Mathis any employee benefits; and Sears did not withhold any taxes from Mathis's checks, although the IRS determined that this was incorrect on Sears' part. Further, although Mathis and Sears had no written agreement, and the record does not show any specific contractual terms, the parties agree that Mathis was initially retained to work on a specific project as an "independent contractor." *See* (Clerk's No. 35-1, Estate Amended Supp. App'x at S4; Clerk's No. 27-3, Sears App'x at 1); *see also Glascock*, 698 F.3d at 699 (finding that the economic realities and terms of plaintiff's work supported independent contractor status where agreement was titled "Independent Contractor Physician Service Agreement," could be terminated at-will by either party, and did not provide any leave policy).

Because Sears did not control the manner and means by which Mathis completed tasks, and the other *Darden* factors are unclear, Mathis was an independent contractor, and the ICRA does not apply to his claims of wage discrimination and discharge due to age and disability. However, the ICRA also prohibits age and disability discrimination in hiring decisions made regarding applicants for employment. *See* IOWA CODE § 216.6(1)(a). The ICRA does not define "applicant for employment," but under the plain meaning of the term, Mathis was an applicant for employment when he applied for an open position with Sears in February 2007. *Cf. Doe v. Iowa Dept. Hum. Servs.*, 786 N.W.2d 853, 858 (Iowa 2010) ("We give words their ordinary and

9

common meaning by considering the context within which they are used, absent a statutory definition or an established meaning in the law."). Viewing the record in the light most favorable to the Estate, the position for which Mathis applied was previously held by an "employee," and Mathis submitted an application for employment to Sears while the position was vacant. (*See* Clerk's No. 35-1, Estate Amended Supp. App'x at S4). Because Mathis was an applicant for employment, and he alleges that Sears did not hire him because of his age and disability, the Court must determine whether the record, viewed in the light most favorable to the Estate, contains a genuine dispute of material fact regarding whether Sears discriminated against Mathis on the basis of his age or disability when it did not hire him in 2007.

### 2. Age and Disability Discrimination

Courts analyze discrimination claims under the ICRA in the same manner as claims under the Age Discrimination in Employment Act (ADEA) and the Americans with Disabilities Act (ADA). *See Diaz v. Tyson Fresh Meats, Inc.*, 643 F.3d 1149, 1151 (8th Cir. 2011) (citing *Fuller v. Iowa Dep't Hum. Servs.*, 576 N.W.2d 324, 329 (Iowa 1998)); *Regel v. K-Mart Corp.*, 190 F.3d 876, 878 (8th Cir. 1999) (citing *Sievers v. Iowa Mut. Ins. Co.*, 581 N.W.2d 633, 635, 638-39 (Iowa 1998)). To survive summary judgment on a claim under the ADEA, the ADA, or the ICRA, an applicant for employment must establish a prima facie case for age or disability discrimination, thereby shifting to the employer burden to produce evidence showing that the applicant was not hired for "a legitimate, nondiscriminatory reason." *See Helfter v. United Parcel Serv., Inc.*, 115 F.3d 613, 618 (8th Cir. 1997), *overruled in part on other grounds by Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011); *Casey's Gen. Stores, Inc. v. Blackford*, 661 N.W.2d 515, 519, 525 (Iowa 2003). If the employer offers evidence that the applicant was not hired for a legitimate, nondiscriminatory reason, the burden returns to the

applicant to show that the reason offered by the employer was pretext for discrimination. *See Helfter*, 115 F.3d at 618; *Casey's Gen. Stores, Inc.*, 661 N.W.2d at 519.

### a. The Estate's Age Discrimination Claim

To establish a prima facie case for age discrimination, the Estate must show: 1) that Mathis was a member of a protected class; 2) that Mathis met the minimum qualifications for the position for which he applied; 3) that Mathis was not hired for the position; and 4) that Sears "continued to attempt to fill the position with applicants having similar qualifications." *Helfter*, 115 F.3d at 618. Under the ADEA, persons aged forty and over are in a protected class, and although the ICRA does not bar younger persons from suing for age discrimination, persons over forty are considered to be protected. *See Haigh v. Gelita USA, Inc.*, 632 F.3d 464, 468 (8th Cir. 2011) (citing 29 U.S.C. § 623(a)); *Underwood v. Monroe Mfg., LLC*, 434 F.Supp. 2d 680, 687 n.9 (S.D. Iowa 2006).

The Estate has shown the first three elements of its prima facie case of age discrimination. Mathis was fifty-eight years old when he applied for the open position in February 2007, making him a member of a protected class. *See Haigh*, 632 F.3d at 468; *Underwood*, 434 F.Supp. 2d at 687 n.9; (Clerk's No. 35-1, Estate Amended Supp. App'x at S1). Although details regarding minimum qualifications for the open position are absent from the record, the fact that Sears assigned some duties related to the open position to Mathis and Mathis performed them for approximately ten months, in addition to the fact that Mathis had previously held a similar position when he was a Sears employee, raises a genuine dispute over whether Mathis was qualified for the position. Mathis was not hired for the position.

Nonetheless, the Court concludes that the Estate has not made a prima facie showing of age discrimination, because there is no showing in the record that Sears continued to attempt to

11

fill the open position with applicants having similar qualifications as Mathis. Although Mathis asserted in his ICRC complaint that Sears filled another position "in the R&D department to replace an employee that quit in June," and that the open position for which he applied remained "in the yearly budget," these allegations are not stated or supported in any detail, and further, they do not show that Sears filled, or took any steps to fill, the position for which he applied. (*See* Clerk's No. 35-1, Estate Supp. App'x at S4). Even viewing the record in the light most favorable to the Estate, there is no evidence that Sears continued to attempt to fill the open position.

Because the Estate cannot establish a prima facie case for age discrimination, no genuine dispute of material fact exists regarding whether Sears discriminated against Mathis on the basis of age. Sears is therefore entitled to summary judgment on the Estate's age discrimination claim.

### b. The Estate's Disability Discrimination Claim

To establish a prima facie case for disability discrimination, the Estate must show: 1) that Mathis had a disability; 2) that Mathis was qualified to perform the duties of the open position, "with or without an accommodation"; and 3) that Mathis was not hired because of his disability. *Casey's Gen. Stores, Inc.*, 661 N.W.2d at 519. A "disability" is "a physical or mental impairment which substantially limits one or more major life activities." *Probasco v. Iowa Civ. Rights Comm'n*, 420 N.W.2d 432, 434 (Iowa 1988) (quoting 240 IOWA ADMIN. CODE 6.1(1)–(3) (1980)). Although diabetes can be considered a disability, the record must contain some facts showing how it limits the plaintiff's major life activities. *See Miller v. Sioux Gateway Fire Dep't*, 497 N.W.2d 838, 841 (Iowa 1993).

Viewing the record in the light most favorable to the Estate, there is no genuine dispute of material fact over whether Mathis had a disability, or, if he did, whether Sears did not hire him

because of his disability. The record shows that Mathis had diabetes, and that his diabetes was severe enough to cause him to miss work for a short period in 1985. However, there is no evidence in the record showing how Mathis's diabetes—or any of his other alleged health conditions—affected him at the time of the alleged discrimination in 2007. Further, even assuming Mathis's diabetes or other health conditions constituted disabilities, there is no evidence in the record that they were the reason Sears did not hire Mathis to the position for which he applied. Although Sears knew of Mathis's diabetes as early as 1985, it retained Mathis as an employee for seventeen years after learning of his diabetes, and hired him again thereafter as an independent contractor. Further, although Mathis asserted in his unsworn ICRC questionnaire that Sears was "aware of my age and all my health conditions," there is no showing in the record, or even an allegation, that any specific Sears employee involved in the decision to not hire Mathis knew of his health conditions or considered them in the course of not hiring him.

Because the Estate cannot establish a prima facie case for disability discrimination, no genuine dispute of material fact exists regarding whether Sears discriminated against Mathis on the basis of disability. Sears is therefore entitled to summary judgment on the Estate's disability discrimination claim.

## CONCLUSION

Because the Estate does not allege any lost wages or overtime pay due to Sears' classification of Mathis as an independent contractor, Sears is entitled to summary judgment on the Estate's claim under the Fair Labor Standards Act. Further, because Mathis was an independent contractor, and not an employee of Sears, from February 2005 to December 2008, and because no genuine dispute of material fact exists regarding whether Sears discriminated

against Mathis on the basis of age or disability as an applicant for employment, Sears is entitled to summary judgment on the Estate's claims under Iowa Code sections 216.6 and 216.6A. For these reasons, Defendant Sears Manufacturing Company's Motion for Summary Judgment (Clerk's No. 27) is **granted**, and the case is dismissed.

IT IS SO ORDERED

Dated this 9th day of January, 2014.

*Celeste F. Bremer*
CELESTE F. BREMER
UNITED STATES MAGISTRATE JUDGE